## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| R. JAMIE RUHL, | : | |
| | : | Case No. 2:13-CV-00716 |
| Plaintiff, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Kemp |
| STEPHEN F. BROWN, *et al.*, | : | |
| | : | |
| Defendants. | : | |

### OPINION & ORDER

This matter is before the Court on Defendants' Motions to Dismiss. (Doc. 5; Doc. 19; Doc. 31). Pro se Plaintiff R. Jamie Ruhl brings this action against Alabama attorneys and judges involved in his divorce and subsequent child-support litigation with his former wife, Cathi Spear. Ruhl alleges violations of the Equal Protection Clause and 42 U.S.C. §§ 1983 & 1985, and also brings claims for quantum merit, based on the attorneys' profits from the litigation, "interference with custody," false imprisonment, abuse of process, intentional infliction of emotional distress, "failure to enforce child support," and fraud. (*See generally Compl.*, Doc. 2). Defendants Langston, Brown, Harris, Caddel, and Shanks ("Attorney Defendants"),[1] Defendants Craig, Langham, and Strange ("Alabama Defendants"), and Defendant Miller, respectively, each move to dismiss for lack of jurisdiction, improper venue, and failure to state a claim. Plaintiff moves to disqualify counsel (Doc. 21), for an "emergency injunction" (Doc. 27), summary judgment (Doc. 33), to amend his pleadings (*id.*), and "attorney bad faith sanctions" (Doc. 38).

For the reasons set forth herein, Defendants' Motions are **GRANTED**. Plaintiff's Motions are **DENIED**. The case is **DISMISSED**.

---

[1] Since the Attorney Defendants answered on August 5, 2013 (*see* Doc. 4), but filed their Motion on September 27, 2013 (*see* Doc. 5), it is incorrect to characterize it as a motion to dismiss. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading . . . ."). The Motion is properly understood as a Motion for Judgment on the Pleadings. *See* Fed. R. Civ. P. 12(c).

## I. BACKGROUND

Plaintiff's rambling and nearly incomprehensible Complaint describes in heavily emotional terms[2] his acrimonious divorce and recent conflict with his former wife over custody of and child support payments for their child, D.J.R. Their parental rights were for a time governed by a May 7, 2008 order issued by the juvenile court of Davidson County, Tennessee. (*Compl.*, Doc. 2 at 16). In 2009 or 2010, however, Spear moved to Alabama and, on January 25, 2010, filed a petition with the Morgan County, Alabama, Juvenile Court, asking it to modify the Tennessee child support order. (*Id.*). Ruhl answered, and filed a counter-petition to modify the custody conditions. (*Id.* at 16-17). Ruhl alleges that Defendants – lawyers for Spear and two Alabama judges – ignored the established terms of the Tennessee Order and "perpetuate[d] [an] unconstitutional culture of separate parent classes." (*Id.* at 17). He takes particular offense at what he perceives as a presumption in favor of the mother, complaining that Spear "was gifted custody of D.J.R. at birth due only to gender," while Ruhl, "a male, legally accepted parentage at birth yet was granted no rights until court ordered." (*Id.* at 17-18).

Since the Tennessee Order favored "equal time," Ruhl alleges that Spear sought to "forum shop[]," fleeing to Alabama and engaging, successfully, in the above-referenced litigation until May 6, 2011, "when the Alabama Board of Civil Appeals . . . ruled that the actions of Spear in the Morgan County Court . . . were void for lack of subject matter jurisdiction." (*Id.* at 18). After the ruling, Spear refiled her case, and Ruhl maintains that he continued to suffer from Spear's litigation. Thus "on May 13, 2011 Langston and Spears would twice repeat res judicata filing on an education and parent time premise adjudicated clearly in Tennessee and reborn by Langham." (*Id.* at 23) (sic). Though the Complaint is unclear, it

---

[2] In one part of his Complaint, Ruhl alleges that Spear "operated as would a serial killer with ruthless conviction that she was right in alienating her minor child from his fit parent." (*Compl.*, Doc. 2 at 22).

2

appears that on May 31, 2011, allegedly with insufficient notice to Ruhl, Judge Langham, the first judge assigned to Spear's case, entered an order for "Notice of Registration of Order and Setting Emergency Hearing," to convene on July 5, 2011. (*Id.* at 23-24). At this proceeding, which may have taken place without Ruhl, the court found that Ruhl was an Alabama resident and entered an order modifying Ruhl's child support obligations. (*Id.* at 25). Ruhl accuses Judge Langham of conspiring with Spear's attorneys, David Langston and Stephen Brown, since the court entered the proposed order drafted by counsel. (*Id.*). Ruhl sought review of Judge Langham's decisions by the Alabama Board of Civil Appeals, and the Alabama Supreme Court, both of which were denied. (*Id.* at 26).

On August 26, 2011, Judge Langham entered a further "pendente lite" order modifying child support and custody, to which Ruhl objects. (*Id.* at 26). This order, according to Ruhl, had the effect of eliminating most of Spear's child support obligations, and allowed Spear "to determine whether or not Ruhl and D.J.R. would be allowed to travel outside the State of Alabama," thus "imprisoning" Ruhl in that state. (*Id.* at 28). On the same day, Judge Langham recused himself from the case, in an effort to relieve Ruhl's concerns, and Judge Brent Craig was assigned to the matter.[3] (*Id.* at 2-29).

Ruhl filed his first suit in federal court on November 15, 2011, alleging violations of 42 U.S.C. §§ 1983 & 1985, as well as various state-law claims, against Spear and Langston. (*Ruhl v. Spear*, Case No. 2:11-CV-1026).[4] He also made various petitions to Defendant Strange, Attorney General of Alabama, and repeatedly (and unsuccessfully) renewed his appeals to the

---

[3] Plaintiff's pleadings are far from clear regarding the timeline of this case. It is possible that Judge Langham recused first, and Judge Craig issued the "pendente lite" order. The distinction is immaterial at this time, however.
[4] This Court dismissed Ruhl's claims against Spear and Langston on April 30, 2012, for lack of personal jurisdiction, since Ruhl had failed to file any responsive pleading to the defendants' motion to dismiss. (*Order*, Doc. 8, *Ruhl v. Spear*, Case No. 2:11-CV-1026 (Apr. 30, 2012)). The Court then dismissed the unknown defendants and terminated the case. (*See id.*, Doc. 9; Doc. 10 (June 8, 2012)).

Alabama Board of Civil Appeals and the Alabama Supreme Court.  (*See Compl.*, Doc. 2 at 30-31).  Ruhl alleges that he suffered further abuses at the hands of Judge Brent, and takes issue with a number of the court's legal conclusions.  (*See, e.g.*, *id.* at 36-37) (Judge Craig was "litigating this matter on [Spear's] behalf"; Spear's pleadings did "not create a justiciable controversy for the court"; "Spear's claim [was] not ripe"; Ruhl "had a clear legal right to summary judgment for lack of jurisdiction.").

Ruhl filed this action on July 19, 2013, alleging various constitutional and state-law claims against Spear's attorneys and Judges Langham and Craig in their individual capacities (*id.* at 45-59, 61-62), as well as against Attorney General Strange, for his "failure to enforce child support obligation" (*id.* at 59-61).  The various Defendants have moved to dismiss based on lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted.  (*See* Doc. 5; Doc. 19; Doc. 31).

Because the Court finds that it lacks personal jurisdiction, it does not address Defendants' other arguments related to venue and failure to state a claim.

## II.     STANDARD OF REVIEW

Defendants move to dismiss Plaintiff's Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  Because "personal jurisdiction is a threshold determination linked to any subsequent order issued by the court," *The Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006), the Court addresses Defendants' jurisdictional arguments first.

Plaintiff bears the burden of establishing that personal jurisdiction over a defendant exists.  *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citation omitted).  Where, as here, "the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an

4

evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' and 'the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal.'" *Id.* (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). Plaintiff can make this showing by "'establishing with reasonable particularity sufficient contacts between [Defendants] and the forum state to support jurisdiction.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quotation omitted). At this stage, the Court "construe[s] the facts in the light most favorable to the non-moving party," and "*does not weigh the controverting assertions of the party seeking dismissal.*" *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (emphasis in original) (citation omitted).

### III.     ANALYSIS

As a threshold matter, "[p]ersonal jurisdiction over an out-of-state defendant arises from certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotations omitted). A federal court's personal jurisdiction[5] exists "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992) (internal citations omitted). Ohio's long-arm statute is not coterminous with federal constitutional limits. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). Nevertheless, the Sixth Circuit "ha[s] consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend

---

[5] Plaintiff alleges jurisdiction on the basis of both diversity, under 28 U.S.C. § 1332, and federal question, under 28 U.S.C. § 1331. (*See Compl.*, Doc. 2 at 11). Because both bases require the Court to consider the Ohio long-arm statute as well as the requirements of due process, the distinction is not relevant here.

traditional notions of fair play and substantial justice." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (internal citations and quotations omitted).

The Parties agree, in principle, that Defendants are not subject to this Court's jurisdiction under a theory of "general" jurisdiction, which requires that "the defendant's contacts with the forum state [be] of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir. 1992) (internal quotations omitted).  Rather, the Parties' arguments focus on "specific" jurisdiction, which" is exercised over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Id.*; (*see Compl.*, Doc. 2 at 11) (focusing on "the intentional acts of defendants to harm [Ruhl]," which "invoke the long arm jurisdiction of Ohio pursuant to O.R.C. 2307.382(A)(6).").

To establish specific jurisdiction consistent with the requirements of due process, Plaintiff must show:  (1) that the Defendant purposefully availed himself of the privilege of acting in the forum state or causing a consequence here; (2) that the cause of action arose from Defendants' activities here; and (3) that the acts of Defendants or consequences caused thereby have a substantial enough connection with Ohio to make the exercise of jurisdiction over Defendants reasonable.  *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 450 (6th Cir. 2012) (quoting *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). Purposeful availment is the "constitutional touchstone" of personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).  Such a requirement protects Defendants from being "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002).

Defendants Langston and Brown argue that Plaintiff cannot possibly show specific jurisdiction, since the Complaint lacks any allegations that would establish any contact between them and the State of Ohio.  They contend that they merely represented Spear in Alabama and nothing more.  (Doc. 5 at 5-6).  Indeed, they argue, the only connection whatsoever with Ohio is the fact that Ruhl lived in Ohio when the Alabama litigation commenced.  (*Id.* at 6).

The Alabama Defendants repeat these arguments, and assert that they have taken no actions that would create the required minimum contacts with Ohio.  (Doc. 19 at 8-9).  Defendant Strange adds that he "took no actions whatsoever in Ohio or directed at it."  (*Id.* at 8).  Defendants Langham and Craig maintain that the actions pointed to by Ruhl, such as "h[olding] hearings and enter[ing] orders" and "executing orders and denying motions" affected Ruhl in Ohio only by the "random" and "fortuitous" fact that Ruhl claimed residency in that state.  (*Id.* at 9).  This, they claim, is "just the type of situation that the 'purposeful availment' requirement is meant to prevent."  (*Id.*).

Finally, Defendant Miller incorporates the arguments made by the other Defendants, and adds that she has had no contact with Ohio, no business in Ohio, and has never represented an Ohio resident.  (Doc. 31 at 5).

Ruhl counters that "Ruhl himself IS the significant connection these Defendants have to the State of Ohio, and thus the Ohio forum is designed to protect citizens from mental torture and property abuse." (Doc. 18 at 4) (emphasis in original).  Ruhl insists that Defendants "tr[y] to bamboozle . . . and enchant [t]his Court to believe the basis of this case is domestic law, which it is absolutely NOT," even while arguing, only one paragraph later, that Defendants committed an "atrocity and abuse" in taking a child from his "fit parent."  (*Id.)* (emphasis in original).

7

Ruhl argues that Defendants have the contacts with Ohio necessary to satisfy Ohio's long arm statute, and the requirements of due process, since they "caused a consequence to a citizen of the forum State of Ohio," in that their "tortious interference prevented their obligations to enforce child support and created false right to modification."  (Doc. 18 at 6-7) (sic).

To prove jurisdiction, Ruhl relies on *Kulko v. California Super. Ct.*, 436 U.S. 84 (1978), a case in which the Supreme Court held that it would violate due process for California state courts to exercise personal jurisdiction over a nonresident, non-domiciliary parent of minor children domiciled in the state.  Ruhl also cites to *Hostetler v. Kennedy*, 590 N.E. 2d 793 (Ohio Ct. App. 1990), for the proposition that Ohio courts would have jurisdiction over a non-resident Defendant who was "tied to a child support act or omission."  (Doc. 18 at 9).  In *Hostetler*, the Ninth District Court of Appeals held that the failure to pay court-ordered child support to a recipient who resided in Ohio was a tortious act or omission "in" the state for purposes of personal jurisdiction, and that the sending of support payments in the mail to Ohio constituted sufficient contact with the state.  590 N.E.2d at 795-96.

Ruhl's arguments are misplaced, and reflect a fundamental misunderstanding of the reach of the federal courts.  First, unlike *Kulko* and *Hostetler*, this is not a case where the parties are the parents and/or guardians of a minor child, where one party has an obligation to pay child support to another.  Spear is not a party to this case.  Ruhl is not appealing his divorce, custody determination, or child support order; indeed, this Court would not have subject matter jurisdiction to hear such a case.

Rather, Ruhl brings this case alleging violations of federal and Ohio law against attorneys and judges who reside in Alabama, work in Alabama, and participated in the events underlying this case in Alabama.  No Defendant here is "tied to a child support act or omission," and no

8

Defendant has paid or failed to pay child support in or to Ohio.  Defendants' only connection whatsoever to Ohio is the fact that Ruhl claims residency here.

Ruhl does not, and cannot, show how Defendants have "purposefully availed" themselves of the privilege of acting in Ohio or causing a consequence here.  They have touched Ohio, if at all, only through the arbitrary and fortuitous fact that Ruhl appeared in court before them.  Plaintiff points to no acts of Defendants that have a "substantial enough connection" with Ohio to make the exercise of jurisdiction here even plausible, let alone "reasonable."  *See Carrier Corp.*, 673 F.3d at 450.

Ruhl complains that Defendants failed in various official court duties in Alabama:  that they failed to provide proper notice to him; that they failed to provide "an articulated standard of conduct" for him; that they "failed to establish any factual evidence to support the charges brought against a fit parent and innocent child"; and that they failed "to provide explanation to Plaintiff Ruhl for their adverse findings."  (Doc. 18 at 14-16).  But these actions took place in Alabama, regarding an Alabama case, and had effect in Alabama – their only connection with Ohio is the fact that Ruhl is from here.  The basic demands of due process require more before a federal court can exercise its jurisdiction over a defendant.  Jurisdiction is proper only "where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum," such as "where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum."  *Burger King*, 471 U.S. at 475-76 (internal quotations omitted).  In such cases, the defendant "manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that

9

forum as well." *Id.* at 476. With regard to the Attorney Defendants, the Alabama Defendants, and Defendant Miller, that cannot be said here.

## IV. PLAINTIFF'S MOTIONS

Plaintiff's pending motions also lack merit. Plaintiff's Motion to Recuse Counsel (Doc. 21) is without any basis in law or fact: Organ, Cole, & Stock LLP never represented Plaintiff or otherwise undertook an attorney-client relationship with him, despite his unilateral communications with the firm. (*See* Doc. 26-1; Doc. 26-2; Doc. 26-3); *cf. Phillips v. Haidet*, 695 N.E.2d 292, 294 (Ohio Ct. App. 1997) ("Disqualification of an attorney is a drastic measure which should not be imposed unless absolutely necessary.") (quotation omitted).

Plaintiff's request for an "emergency injunction" (Doc. 27 at 4) offers no grounds for any sort of emergency injunctive relief. Plaintiff complains of Spear's attempts to "self-modify Plaintiff's set in stone schedule," while admittedly frustrating for Plaintiff, have nothing to do with this case or these Defendants, especially given that Spear is not a party, and moreover are not within this Court's subject matter jurisdiction.

Plaintiff's Motion for summary judgment (Doc. 33), while styled under Fed. R. Civ. P. 56, is in substance a response to Defendants' various motions to dismiss, and offers no evidence, through affidavits or otherwise, to allow the Court to render summary judgment on this case.

Plaintiff's Motion to amend his pleadings (*id.* at 44-45), in order to covert his Count VI (abuse of process) into the tort of malicious civil prosecution is also meritless: the Court need not grant leave to amend when such amendment would be futile. *See Neighborhood Dev. Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 23 (6th Cir.1980) (citation omitted) (a court does not abuse its discretion by "deny[ing] a motion for leave to amend a complaint if such complaint, as amended, could not withstand a motion to dismiss."). Plaintiff offers no explanation to justify leave to amend. And his vague assertion that "[a]ny facts here are deemed

repeated" (Doc. 33 at 44) does nothing to address the Court's lack of personal jurisdiction over Defendants, or to set forth the elements to sustain a claim for malicious prosecution.

Finally, Plaintiff's Motion for Sanctions (Doc. 38) is utterly baseless. Plaintiff's sole ground for sanctions appears to be his disagreement with Defendants' legal arguments. (*See, e.g.*, *id.* at 11). This is not a proper basis for awarding sanctions under Fed. R. Civ. P. 56(h), nor, absent bad faith or vexatious conduct, for the Court to invoke its inherent powers to provide Plaintiff relief. Plaintiff raises no remotely probable allegations otherwise.

## V. CONCLUSION

For the reasons states above, the Court lacks personal jurisdiction over Defendants, and Defendants' Motions to Dismiss (Doc. 5, Doc. 19, Doc. 31) are **GRANTED**. Plaintiff's Motions to disqualify counsel (Doc. 21), for "emergency injunction" (Doc. 27), summary judgment (Doc. 33), to amend his pleadings (*id.*), and for "attorney bad faith sanctions" (Doc. 38) are without merit and are thus **DENIED**. The case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

        s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: August 7, 2014**